# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| FEDERATED MUTUAL INSURANCE COMPANY, | Civil No. 18-2361 (JRT/HB) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION & ORDER ON DEFENDANT'S MOTION TO DISMISS AND CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | |
| Defendants. | |

Mark R Bradford and Stanford P. Hill, **BASSFORD REMELE,** 100 South Fifth Street, Suite 1500 Minneapolis, MN 55402, for Plaintiff.

Scott G Williams, **HKM LAW GROUP,** 30 East Seventh Street, Suite 3200, St Paul, MN 55101, for Defendant.

State Farm filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and a Motion for Summary Judgment under Fed. R. Civ. P. 56(a) related to Plaintiff Federated Mutual Insurance Company's ("Federated") declaratory judgment and equitable subrogation action seeking the recovery of court-ordered costs and interest Federated paid that it alleged State Farm was liable for. Federated also moves for Summary Judgment under Fed. R. Civ. P. 56(a). Because the Court finds that Federated has standing, that Minnesota law recognizes the excess insurer's equitable subrogation rights against the primary insurer, and that no genuine dispute of fact remains and that Federated has shown, as a

matter of law, that State Farm was liable for court costs and pre-judgment interest under the State Farm insurance policy, the Court will deny State Farm's motions and grant in part and deny in part Federated's Motion for Summary Judgment.

## BACKGROUND

### I. FACTUAL BACKGROUND

This case arises out of a 2009 automobile accident, an ensuing state court action, and a dispute about which insurance company is liable for the payment of costs and "interest due to judgment" related to an adverse verdict and order for judgment against the mutually insured party in the underlying case.

#### A. The State Court Action

In 2009, then-16-year-old William McMillan was rear-ended by Nicole Catherine Groenke while on his way to school, leaving McMillan severely injured. (Declaration of Mark R. Bradford ("Bradford Decl.") ¶ 5, Ex. 4 at 60, June 19, 2019, Docket No. 18-1.) Groenke had primary insurance coverage through State Farm. (Bradford Decl. ¶ 2, Ex. 1 ("State Farm Policy"), June 19, 2019, Docket No. 18-1.) The State Farm policy provided Groenke with liability coverage up to $500,000 and, stated

> In addition to the limits of liability, [State Farm] will pay for an insured any costs listed below resulting from such accident.
> 1. Court costs of any suit for damages that we defend.
> 2. Interest on damages owed by the insured due to a judgment and accruing:

> a. After the judgment, and until we pay, offer or deposit in court the amount due under this coverage; or
> b. Before the judgment, where owed by law, and until we pay, offer or deposit in court the amount due under this coverage, but only on that part of the judgment we pay.

(State Farm Policy at 15 (emphasis omitted.)) The parties do not dispute that Minnesota law governs the interpretation of the State Farm Policy.

Groenke also had excess insurance coverage through Federated, which identified the State Farm policy and provided coverage "in excess" of said policy, up to $5,000,000. (Bradford Decl. ¶ 3, Ex. 2 at 46, 48, June 19, 2019, Docket No. 18-1.)

McMillan filed suit against Groenke in 2015 in Minnesota state court. *See McMillan v. Groenke*, Court File No. 27-CV-15-4068 (Hennepin County). As Groenke's primary insurer, State Farm hired counsel to defend Groenke and controlled the litigation. (*See* 2d Aff. of Scott G. Williams ¶¶ 2–4, Exs. A–C, July 10, 2019, Docket No. 22 (letters from outside counsel State Farm hired to litigate the dispute).) On November 15, 2016, a jury found Groenke 100 percent at fault and awarded McMillan $3.25 million in damages, allocated as follows:

| | |
|---|---|
| Past pain, disability, and emotional distress: | $290,000 |
| Future pain, disability, and emotional distress: | $1,325,000 |
| Loss of future earning capacity: | $1,360,000 |
| Future healthcare expenses: | $275,000 |

(Bradford Decl. ¶ 4, Ex. 3 at 57.)

On December 5, 2016, McMillan's counsel filed an affidavit outlining the costs McMillan believed he was entitled to recover in addition to the damages award, and also emailed State Farm informing them of such costs. (*Id*. ¶¶ 7– 8, Exs. 6 and 7.)

On December 9, 2016, the state court issued an order for judgment adopting the verdict. (Bradford Decl. ¶ 5, Ex. 4 at 62.) The order noted that, as a matter of law, McMillan was entitled to pre-verdict interest on the $290,000 for past pain, disability, and emotional distress at a rate of 10% per year; post-verdict/pre-judgment interest on the entire $3.25 million damages award at a rate of 10% per year (or roughly $890.41 per day); and "post-judgment interest together with such costs and disbursements as may be taxed against [Groenke]." (*Id.* at 61–62; *see also* Minn. Stat. § 549.04 subd. 1 (discussing entitlement to taxable costs), § 549.09 (discussing entitlement to interest on damages.)) The entry of judgment was automatically stayed for 30 days per Minn. R. Gen. P. 125, which sets a standard 30-day stay of entry on all orders for judgment that follow a trial to allow the parties to file post-trial motions and draft appeals without formal collection efforts. *See* Minn. R. Gen. P. 125.

    **B.**    **State Farm's "Drake-Ryan Agreement" with McMillan**

After the state court issued its order for judgment, State Farm began "Drake-Ryan Agreement" discussions with McMillan. (Bradford Decl. ¶ 9, Ex. 8 at 11.) A "Drake-Ryan Agreement" is, essentially, a partial settlement agreement in which a claimant releases all claims against the primary insurer (which then extracts itself from the litigation) and

the insured up to the limits of the primary insurer's policy coverage while retaining the right to bring claims against the defendant for a damage award up to the limits of the excess insurer's policy coverage. *Drake v. Ryan*, 514 N.W.2d 785, 790 (Minn. 1994). Although Drake-Ryan Agreements do not require the primary insurer to actually exhaust its policy, if the primary settles for less than its total coverage limits, the Drake-Ryan must include a waiver acknowledging the primary's policy was not exhausted and that the plaintiff will only seek to recover damages "in excess" of the primary's coverage limits. *Id.* at 789.

On December 19, 2016, State Farm sent a draft Drake-Ryan Agreement to McMillan offering him $380,000 as the "full extent of the remaining liability limit of the State Farm policy."[1] (Bradford Decl. ¶ 9, Ex. 8 at 11.) The draft agreement did not discuss any additional obligation to pay for court costs or interest on the judgment or include a waiver of such costs and interest. (*Id.*) State Farm also cc'd Federated on the mailing. (*Id.* at 9.)

On December 21, 2016, Federated wrote to State Farm raising concerns that the draft agreement did not actually exhaust State Farm's obligations to Groenke because it did not account for costs and interest. (*Id.* ¶ 10, Ex. 9 at 15-16.) Federated requested confirmation that State Farm would pay the "costs and all interest accrued, in addition to

---

[1] State Farm previously paid $120,000 from the policy to another claimant from the same accident. (*See* Bradford Dec. ¶ 12, Ex. 11 at 27.) Therefore, only $380,000 of the $500,000 liability coverage was left for McMillan to recover. (*Id.*)

its remaining indemnity limits of $380,000" so that Federated could begin to pursue a global settlement with McMillan. (*Id.* at 16.) State Farm did not respond to Federated and, instead, on December 26, 2016, settled with McMillan consistent with the terms of the draft Drake-Ryan Agreement. (Bradford Decl. ¶ 11, Ex. 10 at 19–22.) On December 29, 2016, State Farm sent a copy of the executed Drake-Ryan Agreement to Federated and extracted itself from the litigation. (Bradford Decl. ¶ 13, Ex. 12 at 49.)

The next day, December 30, 2016, Federated raised concerns about the validity of the Drake-Ryan Agreement with State Farm and warned State Farm that future litigation between the mutual insurers was likely because of it. (*Id.* at 50.) Federated then assumed Groenke's defense under protest. (*Id.*)

Consistent with Minn. R. Gen. P. 125, the court entered judgment on January 9, 2017. (*Id.* ¶ 6, Ex. 5 at 64.) Almost a month later, on February 7, 2017, Federated settled with McMillan for $2,170,000 million. (*Id.* ¶ 14, Ex. 13 at 54.) The Federated settlement noted that State Farm's Drake-Ryan Agreement did not account for costs or interest that McMillan was legally entitled to collect. (*Id.* at 53.) Accordingly, Federated paid those sums in its settlement with McMillan and preserved its right to seek reimbursement from State Farm. (*Id.* at 55–56.) The Federated settlement was allocated as follows:

| | |
|---|---|
| Pre-judgment interest: | $54,526.03 |
| Post-judgment interest: | $25,811.90 |
| Taxable Costs: | $38,925.91 |
| Negotiated Jury Award: | $2,050,736.16 |

(*Id.*). The settlement between Federated and McMillan ended the underlying dispute between McMillan and Groenke.

## II.   PROCEDURAL BACKGROUND

Federated served its Complaint on State Farm on July 16, 2018 seeking a declaratory judgment under Minn. Stat. § 555.01 and equitable subrogation for payments Federated made but for which it alleged State Farm was liable. (Notice of Removal, Ex. A ("Compl.") at 10–13, Aug. 13, 2018, Docket No. 1.)

State Farm timely removed to this Court on August 13, 2018. (Notice of Removal at 4*.*) State Farm filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1), arguing Federated lacked standing to file suit. (June 19, 2010, Docket No. 9.) Alternatively, State Farm moved for summary judgment under Fed. R. Civ. P. 56(a), arguing that Minnesota law does not recognize claims for equitable subrogation between excess and primary insurers and also that liability for costs and interest did not attach under the State Farm Policy at the time it entered into the Drake-Ryan Agreement. (*Id.*) Federated also moved for Summary Judgment under Rule 56(a) arguing State Farm was liable for costs and interest under the State Farm Policy at the time it entered into the Drake-Ryan Agreement. (June 19, 2019, Docket No. 15.) State Farm's Motion to Dismiss will be considered first followed by the parties' cross motions for summary judgment.

## DISCUSSION

I. **MOTION TO DISMISS**

    A. **Standard of Review**

"A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims." *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013). In this fact-based 12(b)(1) attack on Federated's standing, the Court "need not accept bare allegations in" Federated's pleading as true, but rather may "weigh the evidence, and make findings to resolve disputed fact issues." *Disability Support All. v. Heartwood Enterprises, LLC*, 885 F.3d 543, 547 (8th Cir. 2018).

    B. **Constitutional Standing**

"Standing is always a 'threshold question' in determining whether a federal court may hear a case." *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) (quoting *Eckles v. City of Corydon*, 341 F.3d 762, 767 (8th Cir. 2003)). To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (*Lujan v. Defenders*

of *Wildlife*, 504 U.S. 555, 559–61 (1992)). As the party bringing this action, Federated bears the burden of invoking the Court's jurisdiction. *Id.*

State Farm argues Federated lacks standing because Federated is a stranger to both the Drake-Ryan Agreement and the State Farm Policy. However, as the excess insurer Federated has standing "to challenge the interpretation and application" of both the State Farm Policy and the Drake-Ryan Agreement, even if it is a stranger to both contracts, because Federated's liability depends entirely on State Farm's obligations under the both contracts. *Acuity v. Johnson*, 776 F.3d 588, 594 (8th Cir. 2015) ("The rights and liabilities of an excess insurer are entirely predicated upon the rights and liabilities of the primary insurer" and thus an excess insurer may "challenge the interpretation and application of contract terms" of a primary insurer).

Accordingly, the Court will deny State Farm's Motion to Dismiss pursuant to Rule 12(b)(1).

## II. SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a

verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment is appropriate if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party may not rest on mere allegations or denials but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256.

### B. Equitable Subrogation

Subrogation allows the insurer to stand in the shoes of the insured and acquire "all of the rights the insured may have against a third-party." *Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W.2d 74, 77 (Minn. 1997). Subrogation is premised on the idea "that no one should be enriched by another's loss." *Id.*, 566 N.W.2d at 76–77 (quoting 6A John A. Appleman, *Insurance Law & Practice* § 4054 at 143 (1972)). Minnesota law recognizes both equitable and conventional subrogation. *Id.* at 77. Equitable subrogation provides for reimbursement from a party who should have made the payments in the first place. *Id.* (noting the purpose of equitable subrogation is "to place the charge where it ought to

rest, by compelling the payment of the debt by him who ought in equity to pay it." (quoting *Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn. 1983)). While equitable subrogation is highly favored, it "is not an absolute right, but rather, one that depends on the equities and attending facts and circumstances of each case." *Citizens State Bank v. Raven Trading Partners, Inc.*, 786 N.W.2d 274, 279 (Minn. 2010) (quoting Universal *Title Ins. Co. v. United States*, 942 F.2d 1311, 1315 (8th Cir. 1991)).

The Minnesota Supreme Court has long recognized the excess insurer's equitable subrogation rights against the primary insurer. In *Continental Casualty Company v. Reserve Insurance, Company* the court reasoned subrogation is allowed because the excess insurer's position is "analogous to that of the insured when only one insurer is involved." 238 N.W.2d 862, 864 (Minn. 1976) (quoting R. Keeton, Insurance Law, s. 7.8(d)).[2] The Court explained:

> [w]hen there is no excess insurer, the insured becomes his own excess insurer, and his single primary insurer owes him a duty of good faith in protecting him from an excess judgment and personal liability. If the insured purchases excess coverage, he in effect substitutes an excess insurer for himself. It follows that the excess insurer should assume the rights as well as the obligations of the insured in that position.

*Id.*

---

[2] *See also Federated Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 350 N.W.2d 425, 427 (Minn. Ct. App. 1984) ("The line of cases allowing any indemnity between insurers does so on the theory that the excess carrier is subrogated to the insured's right to require the primary carrier to pay its policy limits first").

State Farm argues that *Continental Casualty* does not extend to the recovery of costs and "interest due to a judgment" against a mutually insured. State Farm's reasoning fails. It is undisputed that if Groenke (the insured) sought indemnity from State Farm for payments she made that should have been covered under the policy, she would have a cognizable claim. Consequently, Federated, as the excess insurer standing in Groenke's shoes, has the same rights that Groenke would have. Further, viewing the evidence in a light most favorable to Federated, the Court finds the equities weigh in Federated's favor.

Accordingly, the Court will deny State Farm's motion for summary judgment on this this ground.

C. **State Farm's Liability for Costs and Interest Under its Policy**

The parties dispute whether State Farm was liable to cover costs and pre- and post-judgment interest under its Policy at the time it entered into the Drake-Ryan Agreement and extracted itself from the litigation. As noted above, for a primary insurer to properly extract itself from the litigation under *Drake*, the Drake-Ryan Agreement must either exhaust the primary carrier's policy limits or include a waiver of claims sought between the amount settled for and the primary's policy limits. *Drake*, 514 N.W. at 789. It is undisputed that the Drake-Ryan Agreement in this case did not account for costs or interest that were, at some point, covered under the State Farm Policy. Therefore, if State Farm was liable for costs or interest at the time it entered into the Drake-Ryan Agreement, Federated would be entitled to reimbursement for what State Farm ought to have paid

in the first place and for reasonable costs it incurred defending Groenke after State Farm wrongfully extracted itself from the litigation via the incomplete Drake-Ryan Agreement.

State Farm concedes that its Policy covers the costs and pre- and post-judgment interest at issue. However, it argues that its liability to cover such amounts had not attached when it entered the Drake-Ryan Agreement because, although judgment had been ordered, judgment had not been administratively entered due to Minn. R. Gen. P. 125's 30-day automatic stay of entry.

As to post-judgment interest, State Farm appears to be correct in the sense that it owes Federated nothing. Post-judgment interest accrues "on the unpaid balance of the judgment or award from the time that it is entered or made until it is paid." *See* Minn. Stat. 549.09, subd. 2. Thus, even if State Farm was liable for post-judgment interest under its Policy at the time it entered into the Drake-Ryan Agreement, post-judgment interest had not yet accrued. Federated is therefore not entitled to reimbursement for any post-judgment interest it paid to McMillan.

However, as to the remainder of the costs and pre-judgment interest, State Farm's argument fails for several reasons. First, and primarily, nowhere does the Policy tie State Farm's liability for either costs or interest specifically to the entry of judgment.[3] The

---

[3] Under Minnesota law, the interpretation and application of an insurance policy is a question of law that may properly resolved on summary judgment. *See, e.g.*, *Quade v. Secura Ins.*, 814 N.W.2d 703, 705–06 (Minn. 2012).

provision requiring State Farm to cover costs does not even include the word "judgment," and the provision covering "interest due to a judgment" does not specifically state that judgment must be entered before State Farm's liability attaches under the Policy. Given this language, a reasonable person in Groenke's (the insured) shoes would not have understood the Policy to be limited to costs and interest only after the judgment was administratively entered. *See Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013) ("Provisions in an insurance policy are to be interpreted according to both plain, ordinary sense and what a reasonable person in the position of the insured would have understood the words to mean.") State Farm provides no rationale for why the Court should view costs and pre-judgment interest that had accrued differently from the underlying liability limits of the State Farm Policy at that stage of the litigation.

Second, Minnesota law also suggests that the Court should not impute "entry of judgment" language to the Policy. Minnesota Statutes Chapter 549 governs a party's right to recover costs and interest and, importantly, discusses "judgment" and the "entry of judgment" separately. *See generally* Minn. Stat. §§ 549.01–34. Thus, the Court concludes that when the Chapter states only "judgment," it must be referring to the order for judgment.[4] Additionally, unlike post-judgment interest, pre-judgment interest runs from

---

[4] *See, e.g.*, Minn. Stat. § 549.02 (noting only that "upon judgment in the plaintiff's favor" the plaintiff is entitled to $200); Minn. Stat. § 549.04, subd. 1 (noting only that "the prevailing party" is entitled to recover reasonable costs and not mentioning "judgment" or "entry of judgment"); Minn. Stat. § 549.09 ("When a judgment or award is for the recovery of money, . . . interest from
*(footnote continued on next page)*

the beginning of the judicial proceedings until judgment is administratively entered. *See Northwest Airlines, Inc. v. Flight Trails*, 3 F.3d 292, 297–98 (8th Cir. 1993) (discussing prejudgment interest under § 549.09). Because costs and pre-judgment interest had undoubtedly accrued at the time State Farm entered into the Drake-Ryan Agreement, State Farm was responsible for covering what was owed under the clear terms of the Policy.

Third, State Farm's argument is contrary to the purpose behind Minn. R. Gen. P. 125 and *Drake*. The purpose of Minn. R. Gen. P. 125 is to allow the losing party to file post-trial motions or perfect its appeal free from the threat of formal collection efforts. Minn. R. Gen. P. 125, Advisory Committee Comment (1992 Amendment). Its purpose is certainly not to allow primary insurers to reach partial settlements that pass their coverage obligations onto excess insurers. Similarly, while the Court does not make any bad faith determination regarding State Farm's actions, allowing State Farm to pass its obligation onto Federated in these circumstances would violate key tenants behind the Minnesota Supreme Court's reasoning in *Drake*. *See Drake*, 514 N.W. at 789–90

---

the time of the verdict, award, or report until judgment is finally entered shall be computed [by the court according to the statute] and added to the judgment or award.").

(discussing the potential for primary insurers to enter "token settlements" that force the excess to incur obligations it did not contract for).[5]

Fourth, and finally, there was no practical bar to State Farm's compliance. At the time State Farm executed the Drake-Ryan Agreement, it could have easily determined both the costs and interest McMillan was entitled to recover. State Farm was aware of McMillan's claimed costs and the Court clearly set out the rate at which interest accrued. State Farm therefore could have adequately determined the amount of costs and interest for which it was liable under its Policy.

In short, the Court finds that, as a matter of law, State Farm was obligated by the clear terms of its Policy to cover the costs and pre-judgment interest that McMillan was legally entitled to recover at the time it entered into the Drake-Ryan Agreement. State Farm could not shift its coverage obligations to Federated by not accounting for them in the Drake-Ryan Agreement. Because State Farmed failed to account for the required

---

[5] The Court also notes that this case appears to be the first time a Drake-Ryan Agreement was reached, or at least challenged, post-trial. *See, e.g.*, *Booth v. Gades*, 788 N.W.2d 701, 702 (Minn. 2010) (noting the Drake-Ryan Agreement was entered in May 2007 before trial in November 2007); *Cincinnati Ins. Co. v. Franck*, 644 N.W.2d 471, 472 (Minn. Ct. App. 2002) (discussing the Drake-Ryan Agreement then stating "[t]he Francks then sued the Pennistons"); *Stan Koch & Sons Trucking, Inc. v. Great W. Cas. Co.*, No. 05-1225 (RHK/AJB), 2006 WL 2331181, at *2 (D. Minn. Aug. 10, 2006), aff'd, 517 F.3d 1032 (8th Cir. 2008) ("Immediately before the trial began, Sirius entered into a Drake v. Ryan release with Kelly . . . .").

This makes sense. On balance, post-trial Drake-Ryan Agreements, at least in part, promote policies contrary to the policies behind *Drake*. Indeed, post-trial Drake-Ryan Agreements discourage pre-trial settlements and, in turn, decrease efficiency for the parties and the court, while increasing the excess insurer's exposure to bad faith from the primary insurer. *See Drake*, 514 N.W. 2d at 790 (discussing public policy considerations).

costs and pre-judgment interest in its Drake-Ryan Agreement, the agreement did not allow State Farm to extract itself from the litigation. As a result, in addition to costs and pre-judgment interest, Federated is entitled to recover the reasonable costs it incurred when it undertook Groenke's defense under protest.

Accordingly, because no genuine dispute of fact remains and the Court finds Federated is entitled to judgment as a matter of law, the Court will deny State Farm's Motion for Summary Judgment and grant in part and deny in part Federated's Motion for Summary Judgment. The Court will order State Farm to reimburse Federated in the amount totaling $102,677.94. This amount includes $93,451.94 for the costs and pre-judgment interest that State Farm was liable to pay under its Policy at the time it entered into the Drake-Ryan Agreement. It also includes $9,226.00 for costs, which the Court finds reasonable, that Federated incurred after undertaking Groenke's defense after State Farm wrongfully extracted itself from the litigation.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss and alternatively, for Summary Judgment [Docket No. 9] is **DENIED;**

2. Plaintiff's Motion for Summary Judgment [Docket No. 15] is **GRANTED in part and DENIED in part.**

3. The Court declares that Defendant was liable by the clear terms of the State Farm Policy to cover McMillan's reasonable costs and pre-judgment interest at the time Defendant entered into the Drake-Ryan Agreement;

4. The Court further declares that because Defendant failed to account for costs and pre-judgment interest in the Drake-Ryan Agreement, Defendant wrongfully extracted itself from the underlying litigation;

5. Plaintiff is entitled to judgment in the amount of $102,677.94 for the following payments it made that Defendant was legally obligated to pay for under the terms of Defendant's insurance policy; $38,925.91 in taxable costs; $54,526.03 in pre-judgment interest;[6] and $9,226.00 in defense costs. Payment shall be made within 30 days of the entry of judgment.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 24, 2020
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
Chief Judge
United States District Court

---

[6] The Court notes that Federated requested it be awarded $56,331.50 in pre-judgment interest. (Def. Mem. Supp. at 12, June 19, 2019, Docket No. 17.) However, it appears Federated paid only $54,526.03 in pre-judgment interest to McMillan. (Bradford Decl. ¶ 14, Ex. 13.) The Court therefore will award the lower amount of $54,526.03, not $56,331.50.